**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: July 16 2007

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 06-30487 |
| | ) | |
| Chad Micheal Fisher, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(2) and (b)(3) [Doc. # 33] and Debtor's response [Doc. # 37]. Debtor was married at the time he filed his petition and the petition was originally filed as a joint petition with his wife. However, a petition for divorce was filed after their bankruptcy case was commenced and, thereafter, the case was severed into two cases. At a hearing on the motion to dismiss that counsel for the UST attended in person and Debtor's counsel attended by telephone, the UST agreed that the court should decide the motion only under § 707(b)(3) and only as to Debtor Chad Fisher.

The court has jurisdiction over this case pursuant to 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs, the parties' Stipulation of Facts [Doc. # 52] and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless he converts the case to a Chapter 13.

## BACKGROUND

The parties agreed that the court may decide the motion to dismiss on the following stipulated facts that are relevant to the Trustee's motion brought under § 707(b)(3). Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 22, 2006, which was after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act"). Debtor is 29 years old and single, a divorce decree having been entered after he filed his bankruptcy petition. He has no dependents and has no support, alimony or other obligation relating to the divorce proceedings. Although Debtor lived in the marital home at the time he filed his petition, after the home was abandoned as property of the bankruptcy estate, Debtor moved and is currently residing with his parents. He has been employed by G.A. Wintzer and Son as a laborer for over seven years.

On the date of filing his petition, Debtor's income under the means test exceeded the state median income for a household size of one. Debtor's Schedule I income and his separate Schedule J expenses reflect that he had net income after expenses of $53.73. However, his Schedule J expenses include first and second mortgage payments totaling $1,065, payments that he is no longer making since, as stated above, the property has been abandoned and Debtor no longer resides at that location. Debtor's net income includes a deduction for voluntary monthly 401(k) contributions in the amount of $73.28 and 401(k) loan repayments in the amount of $40.47.

Debtor's actual monthly income less payroll deductions is $2,456. His current monthly expenses total $1,320 and are comprised of the following;

| | |
|---|---|
| rent | $400 |
| electric & heat | $ 50 |
| water & sewer | $ 15 |
| telephone | $ 90 |
| internet & cable | $ 25 |
| home maintenance | $ 50 |
| food | $240 |
| clothing | $ 25 |
| laundry & dry cleaning | $ 25 |
| medical & dental | $ 10 |
| transportation | $140 |
| recreation/entertainment | $ 60 |
| life insurance | $ 40 |
| auto insurance | $150 |

In addition, Debtor makes payments to his parents for an automobile that they purchased for him. Debtor's monthly income less actual expenses totals $1,080.

2

Debtor's debts are primarily consumer debt. His bankruptcy schedules show unsecured nonpriority debt in the amount of $81,601, secured debt in the amount of $127,460, and no unsecured priority debt. Debtor's schedules show minimal, if any, nonexempt assets.

The UST filed a timely motion to dismiss for abuse and, proceeding under § 707(b)(3) only, he argues that the totality of the circumstances are such that Debtor has the ability to repay at least a portion of his unsecured debt.

## **LAW AND ANALYSIS**

This case must be decided under BAPCPA as it was filed after the effective date of the Act. Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA, Congress has clearly lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtor filed his petition in bad faith but instead contends that the totality of the circumstances show that Debtor has the ability to repay a significant portion of his unsecured debt. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal. *Krohn*, 886 F.2d at 126. Other factors include "whether the

3

debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

In this case, the court finds that Debtor has the ability to repay a meaningful portion of his unsecured debt. He enjoys stable employment, being employed at the same job for seven years and there being no indication that he is in danger of losing his job or that he anticipates a future decrease in income within the next five years. Even if Debtor continues to make voluntary contributions to his 401(k) plan, he still has excess monthly income over expenses in the amount of $1,080 that could be paid into a Chapter 13 plan, or $64,800 over sixty months, a period that coincides with the applicable commitment period of a Chapter 13 plan for above median income debtors. *See* 11 U.S.C. § 1325(b)(4). As Debtor's schedules show unsecured debt in the amount of $81,601, an amount less than the limits for eligibility for relief under Chapter 13, and no unsecured priority debt, unsecured creditors may potentially receive a dividend of nearly 80% under a Chapter 13 plan, or more if claims are not filed by all creditors as frequently occurs.[1]

Nevertheless, Debtor argues that the court must consider the fact that he is currently living with his parents and, thus, should consider the additional expenses he will incur if and when he secures his own residence. A similar argument was raised and rejected in *In re Lamanna*, 153 F.3d 1 (1st Cir. 1998). Although *Lamanna* is a pre-BAPCPA case, the First Circuit adopted and applied the same totality of the circumstances test set forth by the Sixth Circuit in *Krohn*, which continues to have vitality under BAPCPA in this court's view. In *Lamanna*, the debtor's monthly income of $1350 exceeded his expenses by $770 per month. The debtor argued, however, that his expenses were artificially low because he was living with his parents. The First Circuit affirmed the bankruptcy court's dismissal of the debtor's petition as a substantial abuse of Chapter 7. The court rejected the debtor's argument, which, as explained by the court, "boils down to the notion that § 707 requires the bankruptcy court to impute a minimum cost of living to a debtor and then measure the debtor's actual income against the higher of the imputed minimum and the

---

[1] It is not known what impact the relief from stay and abandonment granted the secured creditor with respect to Debtor's real property would have on Debtor's total unsecured debt and thus on a Chapter 13 plan. Debtor's schedules show that the real property is undersecured by approximately $37,000. Adding this amount to the total unsecured debt, a meaningful dividend approximating 54% could still be paid to unsecured creditors over 5 years time.

4

debtor's actual expenses." *Id.* at 5. The First Circuit's reasoning is sound and, for the same reasons, this court finds that Debtor's argument is not well taken.

Accordingly, the court finds that, based on these facts, granting Debtor relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the totality of his financial circumstances. *See In re Behlke,* 338 F.3d 429, 437 (6th Cir. 2004) (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors).

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the United States Trustee's motion to dismiss under 11 U.S.C. § 707(b) [Doc. # 33] be, and hereby is, **GRANTED**. Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case or the case will be dismissed by separate order of the court.